**CLERK'S OFFICE**
A TRUE COPY
Feb 08, 2023
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    23    MJ    14 |
| A Black Apple iphone cellular phone bearing IMEI: 355322089313855, and a black Apple iPhone cellular phone bearing IMEI: 356727110833017, currently located in evidence at the FBI, as further described in Attachment A | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the     Eastern     District of     Wisconsin     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g), 922(o), 924(c) and 21 U.S.C. 841(a)(1) | Possession of a firearm by felon, possession of a machine gun, possession of a firearm in furtherance of drug trafficking and drug trafficking |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Jacob Dettmering
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 2/8/2023 _____

City and state: Milwaukee, Wisconsin

_____
*Judge's signature*

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018.  I was assigned to the FBI Capitol Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020.  Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF).  Since 2018, I have investigated violations of Federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants.  I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.  I am aware, based on my training and experience as a law enforcement officer, that cellular phones can be used to store information, including text messages, multimedia messages, photographs, video, a history of incoming and outgoing calls,

contact/address book information, and other data. I am further aware, based on training and experience, that individuals use cell phones to facilitate drug sales and distribution, by, for example, placing and receiving phone calls, and sending and receiving text messages, images, and videos.

3.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.     The property to be searched are a black Apple iPhone cellular phone IMEI: 355322089313885, and, a black Apple iPhone cellular phone IMEI: 356727110833017, seized from the vehicle Keyon STEWART fled from on February 6, 2023, and maintained on inventory number #548 in FBI case number 281D-MW-3335766, hereinafter referred to as the "Devices."  The Devices are currently located in evidence at the Federal Bureau of Investigation Milwaukee Division, 3600 S. Lake Dr, St. Francis, Wisconsin.

6.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**<u>PROBABLE CAUSE</u>**

7.      Since February 2021, the Federal Bureau of Investigation (FBI), the Milwaukee Police Department (MPD), and other agencies have been investigating identified members of the Wild 100's, a violent street gang in Milwaukee, also known as the Shark Gang, and members of other violent rival gangs who have been feuding with the Wild 100's, including Swindle gang member Keyon STEWART (DOB 08/25/1998). Case agents have been investing Keyon STEWART for violations of 18 U.S.C. § 371 (conspiracy to violate the laws of the United States, including the transfer of firearms to felons and transfer of fully automatic machineguns), 18 U.S.C. § 922(g) (possession of a firearm by a felon), 18 U.S.C. § 922(o) (possession of a machinegun) and 21 U.S.C. § 841(a)(1) (drug trafficking).

8.      Between January 25, 2023, and February 5, 2023, case agents conducted physical surveillance on the residence located at 5026 N Bay Ridge Drive, Whitefish Bay, WI, which was identified as the residence of STEWART's girlfriend and a residence where STEWART was frequenting.  Case agents were conducting physical surveillance of this location in an effort to arrest STEWART who had multiple state arrest warrants pending against him.  STEWART was wanted pursuant to several felony state court warrants.  A bench warrant was issued for STEWART on July 21, 2022 in Milwaukee

County Case Number 2020CF001718, and Milwaukee County Case Number 2021CF002319. Case agents are also aware that STEWART is a felon based upon his prior conviction in Milwaukee County Case Number 2019CF000677, in which STWEART was found guilty on January 15, 2020, for violations of Wisconsin Statute 961.41(1m)(h)2 (Possession with Intent to Distribute- THC), a Class H Felony.

9.      On several occasions between January 25, 2023 and February 5, 2023, case agents conducting physical surveillance observed STEWART coming and going from the residence located at 5026 N. Bay Ridge Drive and leaving the residence driving a black Jaguar SUV bearing Wisconsin registration AMG8889, which registered to Janae Simmons-Tillman, who is his girlfriend (and who also has a restraining order against STEWART). A Department of Transportation check indicated that Simmons-Tillman owns a black Jaguar F-Pace with Wisconsin registration AMG8889 with a listed address of 5026 N. Bay Ridge Drive, Whitefish Bay, WI. Case agents conducting physical surveillance noted that STEWART would regularly be wearing a black backpack on his person when coming and going from the residence located at 5026 N. Bay Ridge Drive and entering the black Jaguar SUV.

10.     On or about February 6, 2023, case agents were conducting physical surveillance on 5026 N Bay Ridge Drive, Whitefish Bay, Wisconsin in an attempt to locate and arrest KEYON STEWART based upon numerous pending state arrest warrants.

11.     Case agents were on surveillance at approximately 1:00 p.m., when TFO Boyd observed a black female exit the residence at 5026 N. Bay Ridge Drive, Whitefish

4

Bay, and enter the passenger side of the Black Jaguar. A black male, wearing a black jacket and light blue jeans, exited the residence and entered the driver's seat of the Jaguar, which was backed in and parked in front of the garage door. The vehicle turned on and exited the residence travelling southbound towards Hampton Avenue.

12. Surveillance units were successful in following the vehicle to the area of 5600 W Capitol Drive, where they lost sight of the Jaguar. Case agents then travelled back to the area of 5026 Bay Ridge Drive, Whitefish Bay, WI, to conduct surveillance on the residence. At approximately, 3:50 p.m., the black Jaguar could be observed coming back to the residence located at 5026 N. Bay Ridge, Whitefish Bay, WI. The vehicle pulled up to the residence and backed into the driveway, parking in front of the garage. The headlights turned off, which made case agents believe that the vehicle was turned off. Case agents then decided to arrest STEWART pursuant to his multiple arrest warrants and pulled into the driveway, activating 360 degree red/blue emergency lighting, and pulled directly in front of the Jaguar, blocking the vehicle's exit. Case agents immediately identified the driver of the Jaguar as STEWART.

13. Case agents then exited their vehicles and immediately started issuing lawful commands to STEWART identifying themselves as Police, and stating "Show me your hands." Case agents observed STEWART in the driver's seat and case agents observed STEWART reaching down towards the underside of the driver's seat or floorboard of the Jaguar. After numerous lawful commands, STEWART continued to reach down towards the floorboard of the vehicle. Without warning, STEWART then

5

opened the driver's door and took off running, abandoning the vehicle.  STEWART was observed running through the back yard of the residence and across the street away from case agents.  STEWART ran through the neighbor's yard directly behind him, then crossed Kent Street, ran through another yard, and attempted to jump a fence.  Your affiant was able to grab STEWART as he attempted to get over the fence.  STEWART was taken to the ground and eventually placed in custody after a brief struggle.

14.    Case agents then approached the black Jaguar, which was still parked in the driveway, but was still running, opened the door to ensure the vehicle was safe and clear of danger.  Case agents then turned off the vehicle and observed a firearm on the driver's side floorboard, in plain view, with the gun partially under the driver's seat. Case agents then photographed and then searched the Jaguar that STEWART ran from and abandoned.  Case agents recovered a loaded Glock 19x, 9mm pistol, with an affixed auto sear, making it a fully automatic machine gun, in plain view, tucked partially under the front seat where STEWART was observed reaching down when officers approached and while he was disobeying lawful commands.  Additionally, case agents recovered a dark colored backpack in the back seat of the vehicle that contained approximately 920.9 grams of a green leafy substance, which field tested positive for marijuana.  Based upon training, experience, and the investigation to date, case agents are aware that approximately 920.9 grams of marijuana is not consistent with a personal use quantity of marijuana and instead, is consistent with the possession of marijuana with the intent to further distribute the marijuana.  The marijuana was packaged in large vacuum sealed

6

bags, and also recovered from inside the backpack was an electronic scale, individual baggies, and a cellular telephone, described as a black iPhone bearing IMEI 355322089313885. Additionally, a black Apple iPhone bearing IMEI: 356727110833017 was recovered from the front seat of the Jaguar that STEWART fled from on February 6, 2023; these two cell phones constitute the "Devices."

15. On STEWART's person was a bundle of cash in numerous denominations, which is consistent with U.S. currency obtained from street level sales of controlled substances.

16. On or about February 6, 2023, your affiant took the Glock 19x, 9mm pistol, with affixed auto sear to the firing range at Cudahy Police Department. Your affiant loaded six (6) frangible[1] 9mm bullets into the firearm and shot all six (6) rounds towards a paper target. Your affiant pressed the trigger one-time, and the firearm expelled all six (6) bullets in rapid succession, striking the target. The action of the firearm was consistent with that of a fully automatic machinegun.

17. Based on the information above, I submit that there is probable cause to believe that KEYON STEWART has violated 18 U.S.C. § 922(g)(1) (felon in possession), 18 U.S.C. § 922(o) (possession of a machine gun), 18 U.S.C. § 924(c) (possession of a

_____

[1] A frangible bullet is designed to disintegrate into tiny particles upon target impact. These bullets were used to test fire due to restrictions put in place at the Cudahy Police Department for use on their firing range.

7

firearm in furtherance of drug trafficking), and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance).

18.     The Devices are currently in the lawful possession of the Federal Bureau of Investigation (FBI) Milwaukee after STEWART's arrest. The Devices are currently in storage at FBI Milwaukee, 3600 S. Lake Dr, St. Francis, Wisconsin.  In my training and experience, I know that the Devices have been stored in a way the contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

19.     Based on my training and experience, and the facts as set forth in this affidavit, I submit there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), 18 U.S.C. § 922(O) (possession of a machine gun), and 18 U.S.C. § 924 (c) (possession of a firearm in furtherance of drug trafficking), have been committed by Keyon STEWART. There is also probable cause to search the Devices described in Attachment A for evidence of these crimes, as described in Attachment B.

20.     I know that persons who engage in ongoing criminal activity including the illegal possession of firearms and wire fraud and theft of government property use cellular devices to further their criminal activities. I know that cellular devices can be used to maintain contact with individuals from whom firearms may be obtained and to store information relating to firearms possession and acquisition, including videos and photographs documenting firearms possession. I know that evidence of the illegal

possession and trafficking of firearms can be held on the photographs, videos, call logs, text messages, contact lists, and otherwise stored digital information.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers and devices on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

9

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can

also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

g. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

22. Based on my training, experience, knowledge and research, I know that the Devices may have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training, experience, knowledge, and research, I have learned that examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices, like the Devices at issue here, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some

11

period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

12

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26.   *Manner of execution.*  Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

## <u>ATTACHMENT A</u>

1.      The property to be searched are a black Apple iPhone cellular phone bearing IMEI: 355322089313885, and a black Apple iPhone cellular phone bearing IMEI: 356727110833017, seized from the Jaguar vehicle from which Keyon STEWART fled on February 6, 2023, and maintained on inventory number #548 in FBI case number 281D-MW-3335766, hereinafter referred to as the "Devices."  The Devices are currently located in evidence at Federal Bureau of Investigation Milwaukee Division, 3600 S. Lake Dr, St. Francis, Wisconsin.  This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to

violations of  18 U.S.C. § 922(g)(1) (felon in possession), 18 U.S.C. § 922(o) (possession of

a machine gun), and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of drug

trafficking), and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled

substance), including but not limited to:

   a.      lists of firearms traffickers and related identifying information;

   b.      types, amounts, and prices of firearms transactions, as well as dates,
   places, and amounts of specific transactions;

   c.      any information related to sources of firearms (including names,
   addresses, phone numbers, or any other identifying information);

   d.      any information about firearms, firearm accessories, or ammunition;

   e.      all bank records, checks, credit card bills, account information, and other
   financial records relevant to the sale, transfer, or disposition of firearms;

   f.      Electronic drug or money ledgers, drug distribution or customer lists and
   related identifying information, drug supplier lists (including names, addresses,
   phone numbers, or any other identifying information); correspondence,
   notations, logs, receipts, journals, books, records, and other documents noting
   the price, quantity, and/or times when controlled substances were obtained,
   transferred, sold, distributed, and/or concealed lists of customers and related
   identifying information; types, amounts, and prices of drugs trafficked as well as
   dates, places, and amounts of specific transactions; types, amounts, and prices of
   drugs trafficked as well as dates, places, and amounts of specific transactions;

   g.      Information, records, items, and documents stored on the Devices
   reflecting travel for the purpose of participating in drug trafficking activities,
   such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card
   receipts, taxi cab receipts, hotel and restaurant receipts, canceled checks, maps,
   and records of long distance calls reflecting travel;

h.   All bank records, checks, credit card bills, account information, and other financial records;

i.   Any evidence related to either the ownership, purchase, transfer, or possession of firearms, narcotics, or drug proceeds;

j.   Electronic telephone books, address books, telephone bills, photographs, letters, personal notes, e-mails, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

k.   Photographs, videotapes or other depictions of assets, co-conspirators, controlled substances, firearms, or other activities related to drug trafficking or money laundering; and

l.   Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

2.   Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

❏ Original

CLERK'S OFFICE
A TRUE COPY
Feb 08, 2023
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| A Black Apple iphone cellular phone bearing IMEI: 355322089313855, and a black Apple iPhone cellular phone bearing IMEI: 356727110833017, currently located in evidence at the FBI, as further described in Attachment A | ) ) ) ) |

Case No. 23 MJ 14

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     2/22/2023     *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:     2/8/2023 at 10:21 AM                     *William E. Duffin*
                                                                        *Judge's signature*

City and state:   Milwaukee, Wisconsin                 Honorable William E. Duffin, U.S. Magistrate Judge
                                                                  *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

1.    The property to be searched are a black Apple iPhone cellular phone bearing IMEI: 355322089313885, and a black Apple iPhone cellular phone bearing IMEI: 356727110833017, seized from the Jaguar vehicle from which Keyon STEWART fled on February 6, 2023, and maintained on inventory number #548 in FBI case number 281D-MW-3335766, hereinafter referred to as the "Devices."  The Devices are currently located in evidence at Federal Bureau of Investigation Milwaukee Division, 3600 S. Lake Dr, St. Francis, Wisconsin.  This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1) (felon in possession), 18 U.S.C. § 922(o) (possession of a machine gun), and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of drug trafficking), and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), including but not limited to:

      a.      lists of firearms traffickers and related identifying information;

      b.      types, amounts, and prices of firearms transactions, as well as dates, places, and amounts of specific transactions;

      c.      any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

      d.      any information about firearms, firearm accessories, or ammunition;

      e.      all bank records, checks, credit card bills, account information, and other financial records relevant to the sale, transfer, or disposition of firearms;

      f.      Electronic drug or money ledgers, drug distribution or customer lists and related identifying information, drug supplier lists (including names, addresses, phone numbers, or any other identifying information); correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed lists of customers and related identifying information; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      g.      Information, records, items, and documents stored on the Devices reflecting travel for the purpose of participating in drug trafficking activities, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel;

h.  All bank records, checks, credit card bills, account information, and other financial records;

i.  Any evidence related to either the ownership, purchase, transfer, or possession of firearms, narcotics, or drug proceeds;

j.  Electronic telephone books, address books, telephone bills, photographs, letters, personal notes, e-mails, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

k.  Photographs, videotapes or other depictions of assets, co-conspirators, controlled substances, firearms, or other activities related to drug trafficking or money laundering; and

l.  Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2